LAXMAN ADHIKARI
**LAXMAN LAW GROUP PC**
1390 Market Street, Suite 200
San Francisco, CA 94102
Tel: (650) 483 8614
laxman@laxmanlawgroup.com
*Attorney for Petitioner*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

*Immigration Matter*

| | |
|---|---|
| **PARMJEET PARMJEET** [A# 241-143-163], Petitioner, **v.** **FERETI SEMAIA**, Warden of Adelanto ICE Processing Center; **DAVID J. VENTURELLA**, Acting Director of United States Immigration and Customs Enforcement (ICE); **MARKWAYNE MULLIN**, Secretary of the United States Department of Homeland Security; **TODD BLANCHE**, Acting Attorney General of The United States, Executive Office for Immigration Review (EOIR). Respondents. | Case No. **PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241)** Date Filed: August 25, 2026 |

## I. INTRODUCTION

1. Parmjeet Parmjeet ("Petitioner") urgently requests this Court to order his release from unlawful detention. He asks the Court to issue an Order to Show Cause requiring a response within 5 days. There are no factual disputes in this case, and the law is well-settled.

2. Petitioner is an asylum seeker who fled India. He arrived in the United States on or about April 12, 2023, and was encountered, apprehended, and briefly detained by U.S. Customs and Border Protection. Thereafter, on April 15, 2023, Petitioner was released from immigration detention on his own recognizance (ORR) pursuant to 8 U.S.C. § 1226(a). Then, on or about August 9, 2026, over 3 years later, he was re-detained despite no material change in circumstances, no advance notice, and no hearing to determine whether he poses a flight risk or a danger to the community. Petitioner respectfully requests that this Court issue an order requiring his release from custody because his re-arrest following his initial detention and release on bond, without any material change in circumstances, violates his constitutional rights.

3. Additionally, Petitioner requests a declaratory judgment and injunction ordering that any future detention of Petitioner, unless and until he is the subject of a final order of removal, may only be pursuant to 8 U.S.C. § 1226, and that he is not subject to mandatory detention under 8 U.S.C. § 1225(b). Following his re-detention, he was transferred to the Adelanto ICE Processing Center. Petitioners' removal proceedings remain ongoing before the Immigration Court. Currently, no hearing is scheduled. To date, no final order of removal has been entered, and Petitioner remains in active removal proceedings with his claims for relief from removal still pending adjudication.

4. **Immediate release is the appropriate remedy**. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (finding "that the traditional function of the writ is to secure release from illegal custody").

5. A growing number of federal courts have held that immediate release is an appropriate remedy for a constitutionally invalid arrest and detention. *Hernandez v. Warden*, No. 2:26-cv-03599-MBK, 2026 WL, at *4–7 (C.D. Cal. Apr. 16, 2026); *Yundong Xie v. LaRose*, No. 3:26-cv-00529-RBM-DDL, 2026 WL 628742, at *4–6 (S.D. Cal. Feb. 27, 2026); *Lazaro Maldonado Bautista v. Ernesto Santacruz Jr.*, No. 5:25-cv-01873-SSS-SP, ECF No. 116 at 2–5 (C.D. Cal. Feb. 18, 2026); *Sosa Inzuna v. Warden of Adelanto Det. Facility*, No. 5:26-cv-00198, 2026 WL 233211, at *3 n.2 (C.D. Cal. Jan. 14, 2026); *Sekhon v. Warden of Golden State Annex Det. Facility,* No. 1:25-cv-1692, 2026 WL 74151, at *4 (E.D. Cal. Jan. 9, 2026); *Gil v. Warden, Otay Mesa Det. Ctr.*, No. 3:25-cv-03279, 2025 WL 3675153, at *4 (S.D. Cal. Dec. 17, 2025); *Feisal O. v. Noem*, No. 26-cv-81, 2026 WL 92857, at *3 (D. Minn. Jan. 13, 2026); *Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (finding that post-deprivation review cannot remedy the due process violation of detaining petitioner with no process or individualized assessment); *Cajina v. Wofford*, No. 1:25-cv-01566-DAD-AC (HC), 2025 U.S. Dist. LEXIS 229609, at *2 (E.D. Cal. Nov. 21, 2025); and many more cases with the similar facts and circumstances.

6. A bond hearing before the immigration court will not be an adequate remedy. *See* Kyle Cheney, Judges keep ordering immigration hearings – but say the results are a sham, Politico, Mar. 6, 2016, available at https://www.politico.com/news/2026/03/06/immigrationcase-hearings-judges-00815660.

7. Civil Immigration Detention is generally only permissible for two reasons: to ensure a noncitizen's appearance at immigration hearings and to prevent danger to the community. But DHS did not arrest and detain Petitioner—who demonstrably poses no risk of absconding or of danger to the community—for either reason. Instead, as part of its broader enforcement campaign, DHS detained Petitioner to strip him of procedural protection and to pressure him into abandoning his claims for relief, or otherwise

impede his ability to prepare his case, including his ability to fully assist in preparing evidence in support of his claim.

8. Petitioner's arrest and detention are causing him and his family ongoing harm. Petitioner's income is crucial to his ability to afford legal counsel, to support himself, and to provide support to his loved ones outside the U.S.

9. The Constitution protects Petitioner—and every other person present in this country—from arbitrary arrest and detention and guarantees him due process of law. While the Executive Branch has broad power over the regulation of noncitizens, those powers are still "subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

10. Petitioner respectfully and urgently seeks a writ of habeas corpus ordering the government to release him from unlawful detention, prohibiting his re-arrest absent a finding that he is a danger to his community or a flight risk from a neutral decisionmaker. In addition, to preserve this Court's jurisdiction, Petitioner asks for an order that the government not deport him for the duration of this proceeding.

## II. JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), Article I, § 9, cl. 2 of the U.S. Constitution (the Suspension Clause), the Fourth and Fifth Amendments to the U.S. Constitution, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

12. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district. Petitioner is detained at Adelanto ICE Processing Center, 10400 Rancho Road,

Adelanto, CA 92301.

## III. PARTIES

13. Petitioner **Parmjeet Parmjeet** is a 24-year-old native and citizen of India. He is currently in the physical custody of U.S. Immigration and Customs Enforcement (ICE) at Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301.

14. Respondent **Fereti Semaia** is employed by The GEO Group as Warden of the Adelanto ICE Processing Center, where Petitioner is detained. He has immediate physical custody of Petitioner and is sued in his official capacity.

15. Respondent **David J. Venturella** is the Acting Director of ICE. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States, routinely transacts business in this District, and is legally responsible for pursuing any effort to detain and remove the Petitioner. Respondent Venturella is sued in his official capacity.

16. Respondent **Markwayne Mullin** is the Secretary of Homeland Security and has ultimate authority over DHS. Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens. In that capacity and through his agents, Respondent Mullin has broad authority over and responsibility for the operation and enforcement of the immigration laws; routinely transacts business in this District; and is legally responsible for pursuing any effort to detain and remove the Petitioner. Respondent Mullin is sued in his official capacity.

17. Respondent **Todd Blanche** is the Acting Attorney General of the United States and the most senior official at the Department of Justice. In that capacity and through his agents, he is responsible for overseeing the implementation and enforcement of the federal immigration laws. The Attorney General delegates this responsibility to the Executive Office for Immigration Review, which administers the immigration courts and the BIA.

The Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing INA in removal proceedings, including for custody redeterminations in bond hearings. Respondent Blanche is sued in his official capacity.

## IV. EXHAUSTION

18. There is no statutory exhaustion requirement applicable to Petitioner's challenge to the legality and constitutionality of his present detention. Prudential exhaustion is likewise unnecessary because further administrative review would be futile and could not provide the immediate relief sought. See *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992); *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011); *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

19. Although *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), construed § 1225(b)(2)(A) to require detention of noncitizens who entered without inspection, that interpretation cannot control over binding Ninth Circuit precedent. In *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026), the Ninth Circuit held that noncitizens apprehended in the interior after entering without inspection are detained under § 1226, rather than § 1225(b)(2)(A).

20. Accordingly, the Government cannot rely on *Yajure Hurtado* to subject Petitioner to mandatory detention under § 1225(b)(2)(A). Because Petitioner was apprehended in the interior and is not otherwise subject to mandatory detention, his detention is governed by § 1226. The earlier procedural dispute concerning *Maldonado Bautista* does not alter the subsequently issued, binding Ninth Circuit authority.

21. **Impermissible Categorical Flight Risk Presumption**: Respondent operates under an impermissible categorical presumption that individuals who lack a U.S. citizen or lawful permanent resident spouse, parent, or child have "no anchor" in the United States and therefore present a flight risk. In practice, this presumption results in the routine denial of bond and the absence of meaningful individualized consideration of

relevant factors such as length of residence, community ties, and history of compliance with immigration laws and court orders. Absent judicial intervention, there is a substantial risk that Petitioner will be subjected to the same predetermined framework, rather than receiving the individualized bond hearing that due process requires. Accordingly, Petitioner's continued detention without a constitutionally adequate bond hearing is unlawful.

## V. LEGAL FRAMEWORK

### A. The Constitution prohibits the arbitrary arrest and detention of noncitizens

22. The Constitution affords and requires due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas*, 533 U.S. at 693). These due process rights are both substantive and procedural.

23. First, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

24. These protections extend to noncitizens since "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

25. Substantive due process requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a

noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510 at 519–20, 527–28, 31 (2003).

26. Secondly, the Due Process Clause's procedural protections require that even permissible forms of detention only be imposed where procedural safeguards are in place and have been followed. *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process.")

27. Except in rare situations, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

28. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which continued incarceration would have been lawful has a protected liberty interest in that conditional release. *Morrissey*, 408 U.S. at 482. As the Supreme Court recognized, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." ***Id***. "By whatever name, the liberty is valuable and must be seen within the protection of the Fourteenth Amendment." ***Id***.

29. This reasoning applies with equal or greater force to people released from civil immigration detention. Noncitizens residing in the United States, like Petitioner, have a protected liberty interest in their ongoing freedom from detention. *See Zadvydas*, 533 U.S. at 690. Further, "[g]iven the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of

parolees." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

**B. Due Process and the Immigration and Nationality Act Protect Noncitizens from Summary Removal Without a Hearing.**

30. Deportation, like detention, constitutes a deprivation of liberty protected by the Due Process Clause. A noncitizen's interest in deportation proceedings "is, without question, a weighty one" because "he stands to lose the right 'to stay and live and work in this land of freedom.'" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)).

31. Removal proceedings under Section 240 of the Immigration and Nationality Act ("Section 240 proceedings") accordingly provide important substantive and procedural protection. Noncitizens placed in Section 240 proceedings following initial arrest (as was the Petitioner in this case) are entitled to full hearings in immigration court before immigration authorities can remove them. 8 U.S.C. § 1229a. Noncitizens are afforded statutory rights and protections, including the right to be represented by counsel of their choice and the right to present and confront evidence. 8 U.S.C. § 1229a(b)(4). They are also entitled to administrative appellate review at the Board of Immigration Appeals and further judicial review in the federal Courts of Appeals. *See* 8 C.F.R. § 1003.1(b) (Board of Immigration Appeals); 8 U.S.C. § 1252(a)(5) (Courts of Appeals).

**C. Detention under the Immigration & Nationality Act: 8 U.S.C. § 1225 and 1226**

32. Detention of noncitizens who have not been ordered removed is generally governed by one of two sections of the Immigration and Nationality Act: INA §§ 235 & 236 (8 U.S.C. §§ 1225 & 1226).

33. Section 235 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The statute provides:

> An alien present in the United States who has not been admitted or who arrives in the United States . . . [s]hall be deemed for purposes of this chapter

> an applicant for admission. . .Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title. 8 U.S.C. § 1225(a)(1), (b)(2)(A).

34. An applicant is seeking "admission," as that term is defined by § 1101(a)(13)(A), if he is seeking entry "lawful entry . . . [a]fter inspection" and authorization. *Tovar v. Noem*, No. 5:25-CV-1509-JKP, 2025 U.S. Dist. LEXIS 250408, at *13 (W.D. Tex. 2025).

35. An "[a]rriving alien means an applicant for admission coming or attempting to come into the United States . . . [r]egardless of the means of transport." 8 C.F.R. § 1.2. "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

36. Noncitizens subject to mandatory detention under § 1225(b) may be released only if they are "paroled for urgent humanitarian reasons or significant public benefit.'" *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 U.S. Dist. LEXIS 128085, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *7 (E.D.N.Y. Oct. 6, 2025) (describing mandatory detention under § 1225).

37. INA§ 236), titled "Apprehension and detention of aliens," states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the

United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole . . ..8 U.S.C. § 1226(a). INA § 226 therefore creates a "discretionary detention framework" for noncitizens arrested and detained on a warrant issued by the Attorney General. *Gomes*, 2025 U.S. Dist. LEXIS 128085, 2025 WL 1869299, at *2. It "authorizes the [g]overnment to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289.

38. The arresting immigration officer has the authority to make the initial custody determination. *See Gomes*, 2025 U.S. Dist. LEXIS 128085, 2025 WL 1869299, at *2 (citing 8 C.F.R. § 1236.1(c)(8)).

39. The noncitizen then "ha[s] the right to request a custody redetermination (i.e., bond) hearing before an Immigration Judge." ***Id.*** (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "Bond may be denied only if the government 'either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk.'" *Id.* (alterations in original) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)).

40. .. 8 U.S.C. § 1226(a)(2)(B) also allows release "on an Order of Recognizance, which is a form of conditional parole." ***Id.*** (citations omitted).

41. Thus, § 1226(a) requires "an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite*, 2025 U.S. Dist. LEXIS 197628, 2025 WL 2829511, at *8 (citation omitted).

## VI. FACTUAL ALLEGATIONS

### A. DHS and EOIR seek to increase arrests and detentions

42. Since early last year, DHS has implemented a series of policies aimed at detaining noncitizens present in the United States without inspection, and even those who had previously been released from custody on bond, recognizance, or parole.

43. DHS's policies appear to be motivated by the Administration's imposition of quotas of 3,000 ICE arrests per day. In part as a result of this campaign, ICE's arrests of noncitizens with no criminal record have increased more than 800% since January 2025.[1]

44. The government's new campaign is also a significant shift from previous DHS practice, guided by clear judicial precedent, of only re-detaining noncitizens previously released only upon a material change in circumstances. *See e.g. Lorenzo C.P. v. Noem,* No. 1:25-cv-181, 2025 U.S. Dist. LEXIS 264574, at *7-8 (S.D. Tex. 2025); *De Jesús Aguilar v. English, No. 3:25-CV-898 DRL-SJF, 2025 U.S. Dist. LEXIS 231463, at *15 (N.D. Ind. Nov. 25, 2025)*; *Salinas v. Woosley*, No. 4:25 Civ. 121, 2025 U.S. Dist. LEXIS 228539, 2025 WL 3243837, at *2 (W.D. Ky. Nov. 20, 2025); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *aff'd sub nom. Saravia for A.H. v. Sessions,* 905 F.3d 1137 (9th Cir. 2018) (describing prior practice).

---

José Olivares & Will Craft, *ICE Arrests of Migrants with No Criminal History Surging under Trump*, The Guardian, June 14, 2025, HYPERLINK "https://www.theguardian.com/us-news/2025/jun/14/ice-arrests-migrants-trump-figures"https://www.theguardian.com/us-news/2025/jun/14/ice- HYPERLINK "https://www.theguardian.com/us-news/2025/jun/14/ice-arrests-migrants-trump-figures"arrests-migrants-trump-figures.

**B. BIA decision aligns Agency precedent with novel and expanded use of detention to all persons present without having been inspected; Respondents increase pretextual rearrests**.

45. For decades, noncitizens who entered without inspection, were arrested in the United States, and were placed into removal proceedings were generally subject to discretionary detention under 8 U.S.C. § 1226(a) (and its predecessor statute). Under that framework, they could be considered for release on bond or conditional parole by the Department of Homeland Security ("DHS") and could receive a bond hearing in immigration court before an IJ, who could order release if found not to pose an undue flight risk or danger that would justify continued detention.

46. The government upended this long-held policy and understanding of the law in 2025.

47. On July 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") issued an interim guidance memorandum taking the position that any individual who entered the United States without inspection is categorically ineligible for release on bond and is precluded from seeking a bond hearing before an immigration court — irrespective of the length of time such individual has resided in the United States.

48. Following the issuance of that memorandum, DHS attorneys began advancing this position in immigration proceedings, and certain Immigration Judges have since adopted it as a basis for finding that individuals who entered without inspection are not entitled to a bond hearing before the immigration court.

49. Then, on September 5, 2025, the Board of Immigration Appeals ("BIA") issued a precedential decision, binding on all IJs, holding that an IJ had no authority to consider bond requests for any person who entered the United States without inspection. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

50. Respondents have continued to rearrest and detain noncitizens across the country who entered the U.S. without inspection, even where the noncitizen was previously released

from custody under 8 USC § 1226(a).

51. Respondents often cite *de minimis* alleged violations of conditions of prior release as a pretext for rearrest.

52. Numerous sources have reported that the alleged violations are not supported in the Respondents' recordkeeping systems, or that noncitizens report that the alleged violations simply did not occur. *See, e.g., Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *6 (E.D. Cal. Nov. 10, 2025) (ordering pre-deprivation hearing where Respondents alleged check-in and other electronic monitoring violations, because "[w]hile respondents argue that petitioner is a flight risk, the purpose of a bond hearing is for a neutral decisionmaker to consider and evaluate such an argument to determine whether it is consistent with the facts and to ensure that noncitizens like petitioner are not deprived of their liberty without justification"); *see also E.A.T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025) (ordering immediate release of petitioner and finding that it does not "necessarily follow that Petitioner can be detained for [release conditions] violations without a hearing. That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate detention in a manner that comports with due process"). Judges have also found the supposed violations “negligible" or been skeptical of the existence of purported violations. *See e.g. Alas v. Albarran*, 2025 U.S. Dist. LEXIS 207060 *2 N.1(ND Cal. Oct. 15, 2025).

**C. Petitioner’s unlawful arrest and detention**

53. Petitioner is a 24-year-old native and citizen of India. ***Ex. 2; Ex. 3.***

*54.* Petitioner entered the United States without inspection on or about April 12, 2023. I***d.***

55. Upon his arrival, Petitioner was encountered, apprehended, and briefly detained by U.S. Customs and Border Protection (“CBP”). ***Id.***

56. On April 15, 2023, CBP released Petitioner from immigration detention on his own recognizance to 8 U.S.C. § 1226(a). ***Ex. 4.***

57. Following his release, DHS served Petitioner with a Notice to Appear ("NTA"), charging him as removable under 8 U.S.C. § 1229a and directing him to appear before an Immigration Judge on January 13, 2025. ***Ex. 2.***

58. Petitioner was placed in removal proceedings under 8 U.S.C. § 1229a and has remained in those proceedings continuously since 2023. ***Id.***

59. Following his release from custody, Petitioner filed an application for asylum with EOIR on or about June 30, 2023. ***Ex. 6.***

60. Petitioner received his Employment Authorization Document and has maintained lawful employment authorization. He has consistently complied with all applicable laws by working lawfully, paying taxes, and fulfilling his civic and financial obligations while patiently awaiting the scheduling of his asylum hearing and adjudication of his pending Form I-589, Application for Asylum and for Withholding of Removal.

61. On or about August 9, 2026, Respondents rearrested Petitioner, though no material changes in circumstances occurred.

62. Petitioner was not provided with a pre-deprivation hearing or notice of the basis for his detention.

63. He was not deemed to be a danger to the community.

64. The Notice to Appear does not designate Petitioner as an 'arriving alien,' despite containing a checkbox for that designation. ***Ex. 2.***

65. Petitioner has never been arrested or missed any appointments with Immigration and Customs Enforcement or any other agency and has complied with all terms of his conditional parole.

66. Petitioner is not currently scheduled to appear for a hearing. ***Ex.*** *7*.

67. Petitioner remains detained in Respondents' custody currently. ***Ex. 1.***

68. Wait times for individual merits hearings continue to grow substantially, as Immigration Judge vacancies mount due to attrition, forced departures, and the failure to replace departing judges at a sufficient rate.

69. A significant number of Immigration Judges have been terminated, resigned, or retired in the wake of unprecedented interference with the independence and quasi-judicial function of the immigration courts.

70. Even in cases where bond hearings are granted, they are frequently conducted under conditions that are rushed and fundamentally unfair. Noncitizens are often unable to adequately hear the presiding judge or court interpreter through video conference systems operating from within detention facilities, have severely limited access to counsel for purposes of preparing for hearings, and are afforded hearings that proceed at a pace that does not permit full and meaningful consideration of the evidence or testimony presented.

71. Immigration Judges are neither afforded sufficient time nor provided adequate resources to conduct fair and thorough bond or merits hearings, whether in the detained or non-detained context.

72. Immigration Judges frequently issue bond denials with little or no articulated reasoning to support the finding that a noncitizen presents a flight risk. Appeals from bond determinations routinely take in excess of six months to resolve and seldom result in reversal of the Immigration Judge's underlying findings.

73. Petitioner has complied fully with all applicable requirements governing his application for asylum protection and has appeared at all scheduled immigration appointments following his entry into the United States.

74. Petitioner has never been found to constitute a flight risk or a danger to the community. His continued detention bears no relationship to either of the recognized justifications for civil immigration detention.

75. The conditions at the Adelanto ICE Processing Center are equivalent to, if not worse than, those associated with punitive criminal incarceration. Detained individuals are subjected to inedible food, severely limited access to legal counsel and internet or legal research resources, exploitative costs for supplemental food and telephone communications, and a range of additional deficiencies that are well-documented in the public record.

76. Petitioner's continued detention does not advance any legitimate governmental interest.

**D. Bond hearing before an Immigration Judge is an inadequate remedy**

77. Petitioner is unlikely to receive a fair bond hearing before an immigration judge.

78. Scores of judges have been fired, resigned, or retired in the wake of unprecedented interference with their independence and quasi-judicial function.

79. On information and belief, Respondents have issued directives to immigration judges encouraging and effectively ordering that most bond requests should be denied on ‘flight-risk’ grounds.

80. Immigration Judges continue to report that they or their colleagues are pressured to deny bond requests.

81. Even where bond hearings are granted, they are conducted in rushed and grossly unfair settings. Noncitizens often have difficulty hearing judges or translators during video conferences from detention centers, have limited access to counsel for preparation, and have hearings conducted rapidly, without full consideration of evidence or testimony.

82. Immigration judges often give full weight to uncorroborated ICE/CBP reports,

including *Form I-213*, even where they contain obvious inaccuracies and even in light of growing reports of ICE and CBP fabrications in court testimony, reports, and other settings.

83. Immigration Judges often do not even permit testimony from noncitizens or their witnesses before entering a judgment.

84. Immigration Judges do not have time to review filings submitted in support of a request for release on bond prior to hearings.

85. Immigration Judges are not given the time or resources to adequately conduct fair bond or merits hearings in the detained or non-detained setting.

86. Immigration Judges often cite little or no reasoning in determining that noncitizens are a flight risk.

87. Appeals from Bond decisions take more than 6 months and are unlikely to result in the reversal of a judge's finding.

88. Counsel is unaware of any bond denial being reversed by the BIA in the last 13 months, despite conversing with scores of practitioners regularly about this and related issues.

89. Respondents are in possession of data showing that bond denial rates, both within this District and nationwide, have sharply increased from January 2025 until the present, though the factors for release on bond have remained unchanged.

90. Respondents are in possession of data showing that bond denial rates have increased in response to specific directives and instructions from EOIR leadership.

91. Respondents are in possession of data showing that bond denial rates have risen markedly within the Central District of California in response to District Court orders requiring Immigration Judges to conduct bond hearings.

92. EOIR leadership has coordinated with DHS in providing training materials and

directives to immigration court leaders and directly to immigration judges.

93. EOIR leadership has provided specific email instructions to immigration judges advising them as to whether they should conduct bond hearings or deny for lack of jurisdiction.

**E. Petitioner is suffering irreparable and ongoing harm as a result of unlawful detention**

94. Petitioner is being deprived of his liberty without a lawful basis or a permissible justification. The government previously released him, finding that he posed no danger or flight risk.

95. Petitioner is unable to work with legal counsel to prepare his case, is incarcerated in penal institution-like conditions, and is unable to work to support himself or his family.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution (Substantive Due Process—Detention)

96. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

97. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

98. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See* ***Id***.

99. Petitioner is not a flight risk or a danger to the community. Respondents' detention of Petitioner is therefore unjustified and unlawful. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment.

100. Moreover, Petitioner's detention is punitive as it bears no "reasonable relation" to any legitimate government purpose. ***Id***. (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). Here, the purpose of Petitioner's detention appears to be "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate him for other reasons"—namely, to meet newly imposed DHS quotas and transfer immigration court venue away from an IJ who refused to facilitate DHS's new expedited removal scheme. *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

**<u>SECOND CLAIM FOR RELIEF</u>**

**Violation of the Fifth Amendment to the United States Constitution**

**(Procedural Due Process—Detention)**

101. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

102. Petitioner has a strong liberty interest under the Due Process Clause in not being reincarcerated after prior release. See *Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972); *see also Ortega*, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following an IJ's bond determination); *Nadia Cristina DA Rocha Rosado v. Fred Figueroa, Warden, Eloy Det. Ctr.,* 2025 U.S. Dist. LEXIS 156344, *35

103. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's

constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up); *Zinermon*, 494 U.S. at 127 (Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that noncitizens pose a flight risk or danger to the community. *See Sompal v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024).

104. Petitioner's re-detention without a pre-deprivation hearing or notice of parole revocation violated due process. Over 4 Years after deciding to release Petitioner, Respondents have re-detained Petitioner without prior notice, hearing, or a change in circumstances.

105. Petitioner's continued detention without prior hearing constitutes an ongoing violation of the Petitioner's Constitutional rights under the Due Process Clause.

## THIRD CLAIM FOR RELIEF

### Violation of the Immigration & Nationality Act

106. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

107. Respondent's claim that Petitioner is detained pursuant to 8 U.S.C. § 1225(b).

108. § 1225(b) does not authorize detention where a noncitizen is not an 'arriving alien' or applicant for admission or when a noncitizen has been paroled into the United States.

109. § 1226 does not authorize detention without a pre-deprivation hearing where a noncitizen was previously released on his own recognizance.

110. Respondents do not claim any other source of lawful authority to detain Petitioner.

111. Petitioner's arrest and detention are not authorized by the Immigration &

Nationality Act.

## FOURTH CLAIM FOR RELIEF

**(Petitioner's seizure and continued detention violate 8 U.S.C. § 1357 and 8 C.F.R. §§ 287.3 and 287.8)**

112. Petitioner incorporates by reference and re-alleges all preceding paragraphs of this Petition as if fully set forth herein.

113. Respondents did not comply with statutory or regulatory requirements to arrest or detain Petitioner.

114. Respondents arrested Petitioner in the parking lot of his apartment complex even though he had committed no crime and no material change in circumstances had arisen to justify his arrest or re-detention. Respondents detained Petitioner without any criminal basis, warrantless exigency, or other lawful justification for his arrest and continued detention.

115. The arrest and detention are therefore unlawful.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Order 48-hour notice ahead of any transfer of Petitioner outside this District;

3. Issue a writ of habeas corpus requiring that, within one day, Respondents release the Petitioner;

4. Alternatively, issue a writ of habeas corpus requiring Respondents to release Petitioner unless they provide a bond hearing under 8 U.S.C. § 1226(a) within seven days.

5. Declare that Petitioner’s arrest and detention violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act.

6. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community;

7. Order that Respondents may not re-detain Petitioner while Section 240 proceedings are ongoing, including during any direct appeal from dismissal of proceedings by the IJ absent a change in circumstances;

8. Award Petitioner costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act and 28 U.S.C. § 2412; and

9. Grant such further relief as the Court deems just and proper.

Respectfully submitted this 25th day of August 2026,

*/s/Laxman Adhikari*
Laxman Adhikari
**LAXMAN LAW GROUP PC**
1390 Market Street, Suite 200
San Francisco, CA 94102
Tel: (650) 483 8614
laxman@laxmanlawgroup.com
*Attorney for Petitioner*